United States District Court
Southern District of Texas

**ENTERED**

August 03, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| IMPERIAL HOSPITALITY GROUP, | § | |
| LLC, | § | |
| | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-3231 |
| | § | |
| VANTAGE BANK TEXAS, | § | |
| | § | |
| | § | |
| Appellees. | § | |

**MEMORANDUM AND OPINION**

This is an appeal from the bankruptcy court's order granting summary judgment for Vantage Bank. Imperial 290 Hospitality Group, LLC, Vantage Bank, and third-party guarantors are parties to a construction loan agreement. Vantage Bank owned the Promissory Note that Imperial executed, in the principal sum of $8,800,000. The Note was secured by a Deed of Trust granting a lien on Imperial's real property, and by Continuing Guaranty Agreements. In December 2018, Vantage Bank sent notices of default to Imperial, alleging that Imperial had failed to make payments on the Note. In March 2019, after Imperial failed to cure the defaults, Vantage Bank sued Imperial and the Note's guarantors in the Hidalgo County, Texas state court, to enforce the Promissory Note and accompanying Guaranty Agreements. Imperial filed for bankruptcy and then removed the case to the bankruptcy court for the Southern District of Texas. After a lengthy procedural history, the bankruptcy court granted summary judgment for Vantage Bank and awarded it $3,675,434.76 and its attorneys' fees and costs.

In this appeal, Imperial argues that the bankruptcy court erred by: (1) finding that Vantage Bank had standing to seek recovery under the Note; (2) granting summary judgment when there

1

were genuine factual disputes material to determining Imperial's affirmative defense of modification and to determining whether the Bank properly applied Imperial's payments, credits, and offsets; (3) granting summary judgment when there were genuine factual disputes material to determining the validity of the signatures on the Note and Guaranty Agreements; (4) granting summary judgment without arbitration; (5) awarding attorneys' fees absent sufficient record evidence; and (6) granting summary judgment when there were genuine factual disputes material to determining the validity of the Bank's demand letters. (Docket Entry No. 9). The Bank filed an opposing brief. (Docket Entry No. 8). Based on the briefs, the record, and the law, the court affirms the bankruptcy court's judgment. The reasons are set out below.

## I.     The Legal Standards

### A.     The Standard of Review

"[T]raditional appellate standards" apply to a district court's review on an appeal from a bankruptcy court's judgment or order under 28 U.S.C. § 158(a). *Stern v. Marshall*, 564 U.S. 462, 475 (2011). This court reviews the bankruptcy court's conclusions of law de novo and findings of fact for clear error. *See, e.g.*, *In re Ahern Enters., Inc.*, 507 F.3d 817, 820 (5th Cir. 2007); *In re Barron*, 325 F.3d 690, 692 (5th Cir. 2003). The bankruptcy judge's opportunity to make first-hand credibility determinations entitles its findings to deference, and the district court may not weigh the evidence anew. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). Rather, the district court must determine whether the evidence supports the bankruptcy court's findings and set them aside only if left with "the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d 696, 701 (5th Cir.2003); *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003).

B.      **Summary Judgment**

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters. Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey*

*v. E. Baton Rouge Parish Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted).  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor."  *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).

## II.     Analysis

### A.       The Record

In December 2013, Imperial issued a Promissory Note to Inter National Bank, which was succeeded by Vantage Bank by purchase and merger.  (Docket Entry No. 2 at 377).  The Note was secured by a Deed of Trust granting a lien on property, and by Guaranty Agreements by third parties.  (*Id*. at 379–80, 402).  In November 2018, Imperial allegedly defaulted on its obligation to make timely monthly payments under the Note, and the third-party guarantors failed to pay the sums due.  (*Id*. at 67).  Vantage Bank alleges that it sent default notices to Imperial in December 2018, notifying Imperial of defaults under the Note.  (*Id*.).  Imperial maintains that it never received the default notices.  (Docket Entry No. 9 at 20).  In January 2019, Vantage Bank filed multiple claims in Texas state court, seeking recovery from Imperial of unpaid amounts due under the Note.  (Docket Entry No. 2 at 30-37).  Vantage Bank moved for summary judgment.  (*Id*. at 47).

In March 2019, Imperial filed for relief under Chapter 11 of the United States Bankruptcy Code and removed the action to the bankruptcy court for the Southern District of Texas.  (*Id*. at

4

14–17).  The bankruptcy court entered Cash Collateral and Agreed Orders, requiring Imperial to make monthly payments to Vantage Bank and to close and fund the property sale by the end of 2019.  (*Id*. 764–74).  After Imperial defaulted under both orders, Vantage Bank posted the property for a nonjudicial foreclosure sale scheduled for December 2019.  (*Id*. at 527).

The parties entered into a Settlement Agreement, Forbearance Agreement, and Release, agreeing that Vantage Bank would forbear from exercising its rights and remedies under the loan documents if Imperial fulfilled its obligations under the Forbearance Agreement.  (*Id*. at 527). Imperial offered the bankruptcy court a sale with what it identified as a qualified buyer willing to pay $7 million, but the sale fell through after Imperial defaulted on its sale agreement with the Bank.  *Imperial 290*, Case No. 19-bk-31500, Docket Entry Nos. 129, 143.  The bankruptcy court denied Imperial's subsequent motion to sell the property for $7.4 million based on Vantage Bank's objections.  *Id.* at Docket Entry Nos. 147, 149, 151.  Vantage Bank filed an emergency motion for approval of a real estate purchase agreement.  *Id*. at Docket Entry No. 157.  The bankruptcy court approved the motion, and Vantage Bank sold the property for $6 million.  *Id.* at Docket Entry No. 157 at 10, Docket Entry No. 159.

In September 2020, Vantage Bank moved for summary judgment, seeking recovery for the amounts due on the Note after the property sale.  (*Id*. at 346).  Imperial filed a "Notice of Intent to Arbitrate" the night before the bankruptcy court's hearing on the motion for summary judgment. (*Id*. at 775).  At the hearing, the bankruptcy court entered summary judgment in favor of Vantage Bank, awarding the balance due and owing under the Note in the amount of $3,675,434,760, attorneys' fees in the amount of $285,000, and interest.  (*Id*. at 791, 817).

Vantage Bank submitted summary judgment evidence, including: an affidavit executed by the First Vice President and Senior Asset Manager of the Bank, Juan Garcia; loan documents; and

an affidavit of its attorney, Diann Bartek, on attorneys' fees. (*Id*. at 65, 605). Garcia's affidavit

states that the amount outstanding on the Note is $3,675,434.76. (*Id*.). Imperial and the guarantors

provided no record evidence to support their summary judgment arguments.

### A.     Standing

The bankruptcy court found that Imperial and the guarantors failed to establish genuine

factual disputes material to determining whether Vantage Bank had standing to seek recovery

under the Note. (Docket Entry No. 2 at 845). Imperial argues that the bankruptcy court erred in

finding that Vantage Bank had standing to sue because it failed to prove that it is the Note holder

or owner.   (Docket Entry No. 7 at ¶ 21). Standing is part of subject matter jurisdiction and may

be raised at any time. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). "The jurisdictional

issue of standing is a legal question for which review is de novo." *Crane v. Johnson*, 783 F.3d

244, 250—51 (5th Cir. 2015).

To recover under a promissory note, the plaintiff must prove: (1) the existence of the note;

(2) the party sued signed the note; (3) the plaintiff owns or holds the note; and (4) a certain balance

is due and owing on the note. *Plains Capital Bank v. Rogers*, 715 Fed. App'x 325, 329 (5th Cir.

2017). Juan Garcia's affidavit states that, in his position as First Vice President and Special Assets

Manager of Vantage Bank, he oversaw the transactions between Vantage Bank and Imperial.

(Docket Entry No. 2 at 65). The affidavit also states that Garcia is the custodian of records of

Vantage Bank and has reviewed the records concerning the transactions with Imperial. (*Id*. at 66).

The affidavit states that Vantage Bank is the owner and holder of the Note and of the loan

documents related to the Note, that Imperial defaulted on its obligations under the Note, that

demand letters were sent, and that Imperial refused to pay the amounts due. (*Id*.). Finally, the

affidavit states that, after applying all payments, offsets, and credits, $8,544,053.91 is due and owing under the Note.  (*Id*.).

Imperial contends that the bankruptcy court erred in finding that the Garcia affidavit was sufficient summary judgment evidence and argues that the Certificate of Merger failed to address the transfer or acquisition of any Vantage Bank assets.  (*Id*. at ¶¶ 23, 24).  Imperial points to the Texas Business and Commerce Code, § 10.001(a), which states that "[a] merger must be set forth in a plan of merger."  (Docket Entry No. 11 at ¶ 8).  Imperial argues that Vantage Bank failed to meet its burden to show that it was the noteholder because it did not produce a plan of merger as part of its summary judgment evidence, and because its Certificate of Merger was allegedly incomplete and had missing signatures.  (*Id*.).

Under Texas law, "[a] true and correct copy of a note accompanied by sworn testimony proving ownership and possession of the instrument establishes a plaintiff's status as the owner and holder of the note, absent controverting evidence."  *See Life Ins. Co. of Va. V. Gar-Dal, Inc*., 570 S.W.2d 378, 380 (Tex. 1978).  When corporate entities such as banks or banking associations merge, the entity's rights, franchises, and interests are transferred to and vested in the receiving organization by virtue of the merger, without any deed or transfer of deed.  12 U.S.C. § 215a(e); *see also Comerica Bank v. Progressive Trade Enterprises, Inc.*, 544 S.W.3d 459, 465 (Tex. App.— Houston [1st Dist.] 2018) ("When a merger takes effect, all rights, title, and interest to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested [] in one or more surviving organizations as provided in the plan of merger without . . . any transfer or assignment having occurred.") (citing TEX. BUS. ORG. CODE § 10.008(a)(2)(C)).

Imperial and the guarantors have presented no evidence to controvert Vantage Bank's summary judgment evidence.  *See Comerica,* 544 S.W.3d at 465 ("Because Comerica presented

competent evidence that it was the present owner and holder of the Note, and the [defendants] presented no testimony or other evidence to the contrary, [the court] conclude[d] that Comerica conclusively demonstrated its status as owner and holder of the Note."). Garcia's affidavit and the Certificate of Merger provided sufficient evidence to support the bankruptcy court's summary judgment for the Bank. *See* FED. R. CIV. P. 56(c)(4) (an affidavit used to support a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the stated matters). The bankruptcy court did not err.

**B.      The Motion to Arbitrate**

Imperial filed a notice of intent to invoke arbitration on the eve of the bankruptcy court's summary judgment hearing. (Docket Entry No. 2 at 845). The bankruptcy court declined to dismiss the proceeding in favor of arbitration, describing Imperial's late filing of its notice to arbitrate as a "strategic bad-faith effort to obfuscate the proceeding," giving "no credence to it at all." (*Id*.).

Imperial maintains that the bankruptcy court erred because, under the Note, no motion to compel arbitration is required. (Docket Entry No. 9 at ¶ 35). Imperial argues that it properly filed a notice of arbitration under the Note and that the bankruptcy court abused its discretion by failing to consider the notice of intent to arbitrate or to articulate how the filing was in bad faith, and by refusing to recognize that the issue of waiver was itself subject to arbitration. (*Id*.). Vantage Bank responds that Imperial's notice of arbitration was foreclosed because it was untimely, and that the Forbearance Agreement signed by both parties expressly provided for exclusive jurisdiction in the bankruptcy court. (Docket Entry No. 8 at 14).

 The arbitration provision Imperial relies on states: "[a]ny aggrieved party shall serve a written notice of intent to arbitrate to any and all parties within 360 days after the dispute has

arisen." (Docket Entry No. 2 at 79).   The provision defines "dispute has arisen" as receipt of

service of judicial process.  (*Id*.).   Failure to serve written notice of intent to arbitrate within 360

days waives the right to compel arbitration.  (*Id*.).   The last party in this case was served in early

2019.  Imperial filed its notice of arbitration on September 1, 2020.  The notice was filed outside

the 360-day window.  It was untimely.

The Forbearance Agreement provides an additional basis for denial of this ground for

appeal.   It provides that any lawsuit based on a dispute about the Note and Guaranty Agreements

"shall be brought in bankruptcy court" and that the bankruptcy court is "the sole and exclusive

forum for the resolution of any suit." (Docket Entry No. 2 at 537).

The bankruptcy court did not err.

### C.     The Stay

The parties entered into an Agreed Order for Cash Collateral in May 2019.  The Agreed

Order was approved by Vantage Bank to give Imperial time to market and sell the property.  Due

to Imperial's failure to fully comply with the Order, and its failure to sell the property by the

specified date, Vantage Bank requested that the bankruptcy court lift the stay. *Imperial 290*, Case

No. 19-bk-31500, Docket Entry No. 84 at 3–4.  The bankruptcy court granted the motion. *Id*. at

Docket Entry No. 107.  Imperial maintains that the stay had not been lifted to allow Vantage Bank

to take judgment against Imperial because the Motion for Relief from the Stay was a request to

permit Vantage Bank to foreclose its interest in the property.  (Docket Entry 11 at ¶ 6).   The

bankruptcy court found this argument to be "frivolous at best."  (Docket Entry No. 2 at 845, l. 1-

2).

"The automatic stay serves to protect the bankruptcy estate from actions taken by creditors

outside the bankruptcy forum, not legal actions taken within the bankruptcy court." *Campbell v.*

*Countrywide Home Loans, Inc*., 545 F.3d 348, 356 (5th Cir. 2008).  Whether to lift the stay is in

the  discretion of the bankruptcy judge, and the choice may be overturned only on a showing of

abuse of discretion.  *Holtkamp v. Littlefield (In Re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982).

There is no basis to find an abuse of discretion.

**D.      Attorneys' Fees**

Imperial argues that the bankruptcy court abused its discretion by awarding Vantage Bank

attorneys' fees of $285,000 because it did not provide sufficient evidence to show the necessity

and reasonableness of the fees.  (Docket Entry No. 9 at ¶ 37).

Texas courts use the lodestar method for calculating attorneys' fees.  *Toshiba Mach. Co.,*

*Am. v. SPM Flow Control, Inc*., 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, pet. granted,

judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter*., 54 S.W.3d 526, 528 (Tex. App.—Houston

[1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorneys' fees, the fact finder

must be guided by a specific standard. This standard is substantially similar under both federal law

and state law.").  The first step is to determine the reasonable hourly rate for the attorneys and

nonlegal personnel who worked on the case.  The reasonable hourly rate is based on "the prevailing

market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79

L.Ed.2d 891 (1984).  The second step is to determine the number of hours "reasonably expended."

*McClain v. Lufkin Indus., Inc*., 519 F.3d 264, 284 (5th Cir. 2008).  The court then multiplies the

hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure.  *Id*.

Once the lodestar is determined, a court must determine whether to increase or decrease the amount

based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[1]

---

[1] Those guiding factors include: the time and labor required, the novelty and difficulty of the questions, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation and ability of attorneys,

Imperial argues that the lack of evidence requires remand for reconsideration in light of the

*Johnson* factors.  (*Id*.).  Vantage Bank responds that the affidavit of Vantage Bank's attorney,

Diann Bartek, provided sufficient detail to support the fee award, including her expertise, a review

of the legal services provided, and a careful assessment of the relevant factors.  (Docket Entry No.

8 at 34).  The Bank notes that Imperial failed to object to that affidavit.  (*Id*.).

Imperial's contention that no or inadequate evidence was submitted to support the

reasonableness or necessity of attorneys' fees is directly contradicted by the record.  Again,

Imperial fails to present evidence that the fee award was inaccurate or unreasonable.  The fee

award is affirmed.

> **E.      Whether there are Genuine Disputes as to the Modifications of the Note and Vantage Bank's Applications of Payments, Credits, and Offsets**
>
> **1.      Modification**

Imperial contends that the bankruptcy court erred in granting summary judgment for

Vantage Bank because there is a genuine factual dispute material to deciding whether Vantage

Bank properly accounted for the modification agreement.  (Docket Entry No. 9 at ¶ 27).  Imperial

argues that summary judgment was improper because Vantage Bank failed to provide evidence

that its computation of principal, interest, and amounts due were correct in light of the modification

agreement and the proceeds that it received from the sale of the property.  (*Id*. at ¶ 28).

Imperial's argument is contradicted by the Note included in the summary judgment

evidence and authenticated by Garcia's affidavit.[2]  (Docket Entry No. 2 at 374–78).  The Garcia

---

the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

[2] Garcia's affidavit states: "After the application of all lawful payments, offsets, credits and net proceeds received by the Bank from the Sale of the Property, there remains due and owing under the Note the amount of $3,675,434.76, as of April 28, 2020, with interest accruing thereafter at the rate of $663.40 per day until the date of the judgment."  (Docket Entry No. 2 at 375-76).

affidavit presents uncontroverted competent evidence regarding the amounts owed under the modification agreement.  Imperial has not presented a basis to find error.

### 2.      Payments, Credits, and Offsets

Imperial also contends that the bankruptcy court failed to mitigate damages by approving a sale at a price less than what Imperial allegedly could have realized for the property.  (Docket Entry No. 9 at ¶ 29; see Docket Entry No. 2 at 626–30).  Imperial offered the bankruptcy court a sale for $7.4 million.  (Docket Entry No. 147).  The Bank objected based on Imperial's default on a prior sale agreement, the bankruptcy court denied Imperial's motion to sell, and the court ordered the sale by Vantage Bank for $1.4 million less than Imperial says it could have obtained.  (Docket Entry No. 159).  Imperial argues that the bankruptcy court then failed to credit at least $5.6 million that Vantage Bank collected from the property sale.  As a result, Imperial argues that the alleged deficiency owed is at least $1.6 million more than it should have been.  (Docket Entry No. 7 at ℙ 27).

> Section 51.003(c) of Texas Property Code states:
>
> If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price.

TEX. PROP. CODE § 51.003(c)

Vantage Bank did not foreclose on the property.  The property was sold as a direct sale of mortgaged property by its owner under court order.  The bankruptcy court was correct that a factual dispute as to the fair market value is irrelevant because there was no foreclosure sale.

There are several additional bases to find that Imperial's argument lacks merit.  First, Section 7(f) of the Guaranty Agreements clearly states that the parties waived any rights under

12

Section 51.003, 51.004, and 51.0055 of the Texas Property Code.[3]  Imperial also waived any right

to an offset by signing the Deed of Trust.[4]  Finally, all parties waived any right to an offset in the

Settlement Agreement.[5]

This argument is without merit.  Even if Imperial and the guarantors had a right to an offset,

they waived it.  The bankruptcy court did not err on this ground.

**F.      The Signatures**

Imperial argues that the bankruptcy court erred by granting summary judgment without

adequately considering whether the guarantors' signatures on the copies of the Note and Guaranty

Agreements were genuine.  (Docket Entry No. 9 at ¶ 31).  This conclusory assertion is unsupported

by any affidavits or declarations.  Once the moving party meets its burden in a summary judgment,

the burden shifts to the opposing party to establish a genuine issue of material fact.  *Carr v. Air*

*Line Pilots Ass'n, Int'l*, 866 F.3d 597 (5th Cir. 2017), *as revised* (July 14, 2017).  Imperial failed

to raise a genuine factual dispute material to determining the validity of the signatures.  Imperial

could not, and cannot, defeat Vantage Bank's motion for summary judgment by making

unsubstantiated assertions.  *Lamb*, 914 F.3d at 946.  The bankruptcy court did not err on this

ground.

Imperial also maintains that the bankruptcy court erred in denying it a chance to review the

signatures on the Note and Guaranty Agreements.  (Docket Entry No. 9 at ¶ 31).  When facts are

---

[3] "To the extent not prohibited by applicable law, Guarantor waives . . . (ii) any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, and under any amendments, recodifications, supplements or any successor statue or law of or to any such statute or law."

[4] "In the event an interest in any of the Mortgaged Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Grantor agrees as follows: notwithstanding the provisions of Section 51.003, 51.004, 51.005 of the Property Code [], and to the extend permitted by law, Grantor agrees that Beneficiary shall be entitled to seek a deficiency judgment from Grantor. . ." (Docket Entry No. 2 at 507).

[5] "To the maximum extent permitted by applicable law, Imperial 290 and each Guarantor hereby waives all rights, remedies, claims and defenses in relation to any anti-deficiency laws including, but not limited to Sections 51.003, 51.004, and 51.005 of the Texas Property Code in any way related to the indebtedness owing to Lender. (Docket Entry No. 2 at 536).

not available to the nonmovant, a court may defer consideration of the motion, allow time for further discovery, or issue an appropriate order if the nonmovant "shows by affidavit or declaration that, for specified reason, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d).  Again, Imperial fails to show that it needed the documents or why it did not ask for the documents until the night before the bankruptcy court's hearing.  The bankruptcy court did not abuse its discretion by denying the motion.

### G.      The Demand Letters

Imperial argues that the bankruptcy court erred in finding that Vantage Bank had fulfilled all the conditions for recovery.  (Docket Entry No. 9 at ¶ 39).  It argues that the demand notices dated in December 2018 referred to a December 2017 demand letter, which was allegedly never produced, and contained insufficient information to inform Imperial of the claims in default.  (*Id*.). But sending a demand is not an element that a lender must prove to act on a promissory note. *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1264 (5th Cir. 1994) (to recover on a breach of guaranty agreement, plaintiff must prove: (1) existence and ownership of guaranty agreement; (2) terms of underlying contract by the holder; (3) occurrence of the conditions upon which liability is based; and (4) a failure or refusal to perform the promise by the guarantor).

Imperial also states that the demand letters were issued before the December 2018 and January 2019 affidavit recording the Certificate of Merger, and that Vantage Bank had no basis for issuing the demand letters.  (Docket Entry No. 9 at ¶ 39).  This is incorrect.  The Certificate of Merger included in the summary judgment evidence was effective in November 2018.  (Docket Entry No. 2 at 396–97).  The Certificate was dated and effective before the earliest demand letter sent on December 4, 2018.  (*Id*.).

14

**III.    Conclusion**

The bankruptcy court's final judgment is affirmed.  This appeal is dismissed by separate

order.

SIGNED on August 3, 2021, at Houston, Texas.

_____
Lee H. Rosenthal

15